**HODGES & FOTY, L.L.P.**
David W. Hodges
Texas State Bar No. 00796765
**Pro Hac Vice Forthcoming*
dhodges@hftrialfirm.com
Michael Goldsmith
Texas State Bar No. 24120856
**Pro Hac Vice Forthcoming*
mgoldsmith@hftrialfirm.com
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

**LEAD ATTORNEY IN CHARGE FOR
PLAINTIFFS AND CLASS MEMBERS**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Myers and Emily Peters, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br>v.<br><br>Racerworld, LLC d/b/a Bourbon Street; Arizona Cabarets, LLC; DCA Holdings, LLC; Robert Stone, Individually; and Rosalie Raptosh, Individually;<br><br>Defendants. | CASE NO.<br>ORIGINAL COLLECTIVE ACTION COMPLAINT AND JURY DEMAND |

## I. SUMMARY

1.      Defendants Racerworld, LLC d/b/a Bourbon Street; Arizona Cabarets, LLC; DCA Holdings, LLC; Robert Stone; and Rosalie Raptosh (hereinafter "Defendants"), required Nicole Myers and Emily Peter, (hereinafter "Plaintiffs") to work as exotic dancers

1

at their adult entertainment club, but refused to compensate them at the applicable minimum wage rate.

2.     Specifically, Defendants misclassified dancers, including Plaintiffs, as independent contractors. Plaintiffs' only compensation was in the form of tips from club patrons, the club paid no wages. In fact, Defendants took money from Plaintiffs under the premise that they had to pay for their space at the club. Plaintiffs were also required to share their tips with Defendants and Defendants' employees who do not customarily receive tips outside of a valid tip pool.

3.     As a result, Defendants failed to pay Plaintiffs and all other members of the class and collective minimum wage compensation, which they were entitled to under the Federal Fair Labor Standards Act ("FLSA") and the Arizona Fair Wages and Healthy Families Act.

4.     Plaintiffs bring this class and collective action against Defendants seeking damages, backpay, restitution, liquidated damages, prejudgment interest, post judgment interest, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable, and equitable in the circumstances.

## II.     SUBJECT MATTER JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §216(b), 28 U.S.C. §1331, and Arizona Revised Statutes § 23-364.

6.     This Court also has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. §1367 because such claims do not raise novel or complex issues of state law, and because those claims derive from a common nucleus of operative facts from which the FLSA claims stated herein derive.

7.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants operate an adult entertainment club that is located in this District.

III.   **PARTIES AND PERSONAL JURISDICTION**

8.   Plaintiff Nicole Myers is an individual residing in Arizona. She worked for Defendants in Phoenix, Arizona from August 2017 to November 2019 on a consistent basis. She lived in Phoenix, Arizona and was Defendants' employee. Her consent is attached hereto as Exhibit "A".

9.   Plaintiff Emily Peters is an individual residing in Arizona. She worked for Defendants in Phoenix, Arizona from August 2017 to November 2019 on a consistent basis. She lived in Phoenix, Arizona and was Defendants' employee. Her consent is attached hereto as Exhibit "B".

10.   Opt-in Plaintiffs are current or former exotic dancers who have worked at Defendants' adult entertainment club within the applicable limitations period and will file a valid consent to join this suit with the Court.

11.   The Rule 23 Class Members are all current and former exotic dancers who worked at Defendants' adult entertainment club at any time starting three years before this Complaint was filed, up to the present.

12.   Arizona Cabarets, LLC, is an Arizona for-profit corporation that has many adult entertainment subsidiaries. One of these is Racerworld, LLC, d/b/a Bourbon Street. Arizona Cabarets, LLC, may be served via its registered agent, Registered Agents Inc., at 1846 East Innovation Park Dr., Suite 100, Oro Valley, AZ 85755.

13.   This Court has personal jurisdiction over Arizona Cabarets LLC, because it is doing business in Arizona. Additionally, its subsidiary, Racerworld, LLC, is doing business in Arizona and the two organizations are effectively the same company and operate as a single enterprise.

14.   Racerworld, LLC d/b/a Bourbon Street is domestic for-profit corporation incorporated in Arizona. It may be served via its registered agent, Registered Agents Inc., at 1846 East Innovation Park Dr., Suite 100, Oro Valley, AZ 85755.

15.     DCA Holdings, LLC, is a domestic for-profit corporation incorporated in Arizona. It may be served via its registered agent, Registered Agents Inc., at 1846 East Innovation Park Dr., Suite 100, Oro Valley, AZ 85755.

16.     Robert Stone was the manager of Bourbon Street during the statutory period. He may be served at 3702 East Campbell Avenue, Phoenix, AZ 85018, or wherever he may be found.

17.     Rosalie Raptosh is the President of Bourbon Street. She may be served at 10095 East Cactus Road, Scottsdale, AZ 85260, or wherever she may be found.

18.     This Court has personal jurisdiction over Defendants because Defendants have and continue to have systematic contacts with the State of Arizona sufficient to establish general jurisdiction over them. Specifically, Defendants conduct and/or conducted business in Arizona by operating a club in Phoenix. Defendants also employ workers and contract with residents and businesses in Phoenix.

19.     This cause of action arose from or relates to the contacts of Defendants with Arizona residents, thereby conferring specific jurisdiction over Defendants.

20.     This Court has personal jurisdiction over Robert Stone because he resides in Phoenix, Arizona.

21.     This Court has personal jurisdiction over Rosalie Raptosh because she resides in Scottsdale, Arizona.

## IV.    COVERAGE

22.     At all material times, Defendants have been an employer within the meaning of 3(d) of the FLSA, 29 U.S.C. § 203(d) of Ariz. Rev. Stat. Ann. § 23-350(3), and § 23-362(B) of Ariz. Rev. Stat. Ann.

23.     The Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).

24.     Similarly, Arizona defines "employer" broadly to include "any corporation, proprietorship, partnership, joint venture, limited liability company, trust, association,

political subdivision of the state, individual, or other entity acting directly or indirectly in the interest of an employer in relation to an employee, but does not include the state of Arizona, the United States, or a small business." Ariz. Rev. Stat. Ann. § 23-362(B).

25.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

26.     For all intents and purposes, Defendants Racerworld, LLC, Arizona Cabarets, LLC, and DCA Holdings, LLC, are effectively the same company and operate as a single enterprise. Despite the corporate fragmentation, a "single enterprise" under the FLSA exists. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984).

27.     Defendants operate in a unified manner and under common control. Defendants shared the same officers and directors, namely David Alexander. In fact, as CEO, David Alexander oversaw and controlled the operations of each Defendant LLC. Defendants also share the same registered address of 7349 Via Paseo Del Sur #515-514 Scottsdale, AZ 85258.

28.     Moreover, Defendants have a common business purposes to operate gentlemen's clubs for profit.

29.     Based upon these facts, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Reich v. Bay, Inc.*, 23 F.3d 110, 113 (5th Cir. 1994). Additionally, based upon these facts, Defendants are joint employers and are jointly and severally liable for all wage and hour compliance, including the payment of overtime and minimum wage compensation. See 29 C.F.R. § 791.2(a); *Schultz v. Capital International Security, Inc.*, 466 F.3d 298, 306 (4th Cir. 2006).

30.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

31.     At all material times, Plaintiffs, FLSA Class Members, and Arizona Class Members were individual employees as defined by 29 USC § 206-207 and Ariz. Rev. Stat. Ann. § 23-362(A).

32.     Defendant Robert Stone is the manager Defendant Racerworld, LLC d/b/a Bourbon Street Club.

33.     As manager of Racerworld, LLC d/b/a Bourbon Street Club, Defendant Stone employed the Plaintiffs, FLSA Class Members, and Arizona Class Members as employees who danced for and entertained customers.

34.     Defendant Robert Stone controlled the nature, pay structure, and employment relationship of Plaintiffs, FLSA Class Members, and Arizona Class Members.

35.     At all material times, Defendant Stone had the authority to hire and fire employees, to direct and supervise the work of employees, to sign on the business's checking accounts to include payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, Defendant Stone was responsible for the day-to-day affairs of Racerworld, LLC d/b/a Bourbon Street Club, specifically for determining whether Racerworld, LLC d/b/a Bourbon Street Club complied with the FLSA.

36.     Defendant Rosalie Raptosh is the president of Defendant Racerworld, LLC d/b/a Bourbon Street Club.

37.     As the president of Racerworld, LLC d/b/a Bourbon Street Club, Defendant Raptosh employed the Plaintiffs, FLSA Class Members, and Arizona Class Members as employees who danced for and entertained customers.

38.     Defendant Raptosh controlled the nature, pay structure, and employment relationship of Plaintiffs, FLSA Class Members, and Arizona Class Members.

39.     At all material times, Defendant Raptosh had the authority to hire and fire employees, to direct and supervise the work of employees, to sign on the business's checking accounts to include payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, Defendant

Raptosh was responsible for the day-to-day affairs of Racerworld, LLC d/b/a Bourbon Street Club, specifically for determining whether Racerworld, LLC d/b/a Bourbon Street Club complied with the FLSA.

**V.    FACTS**

40.    Defendants operate an adult entertainment club in Phoenix, Arizona under the name of "Bourbon Street."

41.    Defendants employ exotic dancers and have employed hundreds of dancers over the years at Bourbon Street.

42.    Plaintiffs were previously employed as exotic dancers at Defendants' adult entertainment club during the statutory time period.

43.    Plaintiffs worked on a regular basis for Defendants' establishment located in Phoenix, Arizona.

44.    Plaintiffs worked at Bourbon Street from August 2017 to November 2019.

45.    Plaintiff Myers worked, on average five hours per shift during her employment and three shifts per week for a total of fifteen hours per week.

46.    Plaintiff Peters worked, on average five hours per shift during her employment and four shifts per week for a total of twenty hours per week.

47.    Plaintiffs never received any wages during their employment with Bourbon Street.

48.    During at least one workweek between August 2017 and November 2019, Defendants did not pay Plaintiffs the state or federally mandated minimum wage. As an illustrative example, starting in the first week of August 2017 that Plaintiffs worked for Defendants as dancers, and continuing until the end of their employment with Bourbon Street, Plaintiffs were not paid a minimum wage.

49.    Similarly, Opt-In Plaintiffs and Arizona Class Members did not work a single hour at Bourbon Street where they were paid the federally mandated minimum wage of $7.25 an hour or the state mandated minimum wage of $12.15 under Arizona Revised Statutes § 23-363 effective January 1, 2021. The previous minimum wages in Arizona

7

during the relevant time periods are as follows: $11 in 2019, $10.50 in 2018, and $10 in 2017.

50.     In fact, Plaintiffs, FLSA Class Members, and Arizona Class Members paid to work at Bourbon Street. They were classified by Defendants as independent contractors who had to pay house fees to dance at Bourbon Street.

51.     Plaintiffs, FLSA Class Members, and Arizona Class Members were compensated exclusively through tips from Defendants' customers.  That is, Defendants did not pay them whatsoever for any hours worked at its establishment.

52.     Furthermore, Defendants charged Plaintiffs, FLSA Class Members, and Arizona Class Members a "house fee" per shift worked. In other words, they had to pay to work at Bourbon Street and sometimes completed a full shift only to owe the club money.

53.     Defendants also required Plaintiffs, opt in Plaintiffs, and Arizona Fair Wages and Healthy Families Act Class Members to share their tips with other non-service employees who do not customarily receive tips, including club managers, the disc jockeys, and security.

54.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated § 203(m) when they failed to notify Plaintiffs about the tip credit allowance before the credit was utilized, meaning Defendants' exotic dancers were never made aware of how the tip credit allowance worked or the amounts to be credited.

55.     Defendants additionally violated § 203(m) because they did not allow Plaintiffs to retain all their tips, but instead required Plaintiffs and Class Members to share their tips with other non-service employees who do not customarily receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

56.     Furthermore, Defendants are in violation of Arizona's tipped-employee compensation provision, Ariz. Rev. Stat. Ann. § 23-363(C), which provides that "the

employer may pay a wage up to $3.00 per hour less than the minimum wage if the employer can establish . . . that for each week, when adding tips received to wages paid, the employee received not less than the minimum wage for all hours worked." Defendants failed to compensate Plaintiffs with wages for any hours worked in violation of the Arizona Minimum Wage Act.

57.     Plaintiffs and Class Members received tips and/or dance fees from Defendant's customers but no other form of payment from their employer.

58.     The money received by Bourbon Street after a shift of dance performances was not included in Defendants' gross sales receipts and was not disbursed in any way as wages to any workers.

59.     Defendants illegally classified the dancers as independent contractors. However, at all times, Plaintiffs, opt in Plaintiffs, and Arizona Class Members were employees of Defendants under both Federal and State Law. At all times, Defendants required Plaintiffs and other exotic dancers to perform private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

60.     Defendants hired/fired, issued pay, supervised, directed, disciplined, and performed all other duties generally associated with that of an employer with regard to the dancers.

61.     The following non-exhaustive list of policies and procedures actually implemented during the relevant statutory period further demonstrates the dancers' status as employees and supports their claims:

        a.     Defendants have the sole right to hire and fire the dancers;

        b.     Defendants required Plaintiffs to audition to work at the premises;

        c.     Defendants required Plaintiff to maintain weight to continue working at the premises;

        d.     Defendants make dancers pay a house fee to work the premises and the fee increases with the time of the night;

        e.     Plaintiffs paid between $35 and $65 depending on the time and day to

1   Defendants as a house fee, to dance on stage at Bourbon Street every
2   shift;

3   f.   Defendants unilaterally make the decision not to pay any wages to
4   dancers;

5   g.   Defendants provide the dancers with music, stages, poles, and other
6   tools to perform dances; the dancer only provides her own body;

7   h.   Dancers make no financial investment with Defendants' business;

8   i.   Defendants mandate that dancers pay a minimum tip out per shift of
9   $10 to the DJ, $8 to bouncers, $10 to house moms and $10 to
10   managers;

11   j.   Defendants deduct a portion of the charge automatically when
12   customers paid with a credit card;

13   k.   Dancers are required to work at least four hours a shift, and are fined
14   $65 if they do not comply;

15   l.   Defendants track dancers' hours and require dancers to clock in and
16   out on a sign in sheet;

17   m.   Defendants mandate that dancers be escorted out of the club by a
18   bouncer whenever they leave;

19   n.   Defendants apply fines/fees to the dancers if they fail to follow
20   Defendants' guidelines or directions;

21   o.   Defendants maintain the premises – including the stage, bar, and
22   audio set up;

23   p.   Defendants hire all employees of Bourbon Street – the dancers, DJ's,
24   bouncers, managers, and employ dozens of dancers at one time;

25   q.   Defendants demanded exclusivity by the dancers employed at
26   Bourbon Street; and

27   r.   Defendants employ many dancers, including the named Plaintiffs, for
28   several months at least.

62. Defendants misclassified Plaintiffs, FLSA Class Members, and Arizona Class Members as independent contractors to avoid Defendants' obligation to pay them pursuant to the FLSA and State Law.

63. Plaintiffs, FLSA Class Members, and Arizona Class Members constituted the workforce without which Defendants could not perform their services.

64. Plaintiffs, FLSA Class Members, and Arizona Class Members are not exempt from the minimum wage requirements under the FLSA and applicable state labor laws.

65. Defendants' method of paying Plaintiffs, FLSA Class Members, and Arizona Class Members violated the FLSA and was willful and not based on a good faith and reasonable belief that its conduct complied with the FLSA.

66. Defendants' method of paying Plaintiffs, FLSA Class Members, and Arizona Class Members violated the Arizona Minimum Wage Act and Arizona Wage Law and was willful and not based on a good faith and reasonable belief that its conduct complied with Arizona Law.

67. Defendants misclassified Plaintiff, FLSA Class Members, and Arizona Class Members with the sole intent to avoid paying them in accordance with the FLSA. There are multiple federal court opinions finding that this method of compensation is in violation of the FLSA and, therefore, Defendants' conduct is willful.

## VI.   EQUITABLE TOLLING

68. The doctrine of equitable tolling preserves a plaintiff's full claim when a strict application of the statute of limitations would be inequitable. *See Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760–61 (9th Cir. 1981), abrogated on other grounds by *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

69. Equitable tolling is proper when an employer has engaged in misleading conduct. Defendants intentionally misled Plaintiffs into believing that they were not required to pay them minimum wage. Defendants coerced Plaintiffs, FLSA Class Members, and Arizona Class Members into believing that they were independent

contractors. Consequently, Plaintiffs, FLSA Class Members, and Arizona Class Members were victims of fraud and unable to ascertain any violation taking place.

70.     Thus, the statute of limitations for Plaintiffs, FLSA Class Members, and Arizona Class Members should be equitably tolled due to Defendants' fraudulent concealment of Plaintiffs', FLSA Class Members', and Arizona Class Members' rights. Plaintiffs therefore seek to have the limitations period extended from the first date that Defendants used this covert payroll practice up to the time each Plaintiff joins this lawsuit.

## VII.   CAUSES OF ACTION

### COUNT I: FAILURE TO PAY FEDERAL MINIMUM WAGE (COLLECTIVE ACTION)

71.     Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

72.     Defendants' willful practice of failing to pay Plaintiffs and FLSA Class Members at the required minimum wage rate violates the FLSA and was not based in good faith. 29 U.S.C. § 206.

73.     The FLSA required that Defendants allow Plaintiffs and other similarly situated exotic dancers to keep all tips and gratuities received from customers. As set forth above, Defendants failed to pay Plaintiffs and other similarly situated exotic dancers at hourly rates in compliance with the FLSA Federal Minimum Wage requirements. Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other exotic dancers and belonging to Plaintiffs and other exotic dancers.

74.     As alleged above, Defendants' practice of collecting house fees from the dancers also violates the law.

75.     None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiffs.

## COUNT II: VIOLATION OF ARIZONA STATE LABOR LAWS FOR FAILURE TO PAY MINIMUM WAGE (CLASS ACTION)

76.     Plaintiffs and Arizona Class Members incorporate by reference the allegations above.

77.     Under Arizona Revised Statutes § 23-363, effective January 1, 2021, the state minimum wage is currently $12.15. The previous minimum wages in Arizona during the relevant time periods are as follows: $11 in 2019, $10.50 in 2018, and $10 in 2017.

78.     As set forth above, Defendants failed to pay Plaintiffs and other similarly situated exotic dancers at hourly rates in compliance with the Arizona minimum wage requirements.

79.     Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other exotic dancers and belonging to Plaintiffs and other exotic dancers. Defendants also charged house fees illegally.

80.     Defendants' failure to pay Plaintiffs and other similarly situated exotic dancers as required by Arizona state laws was willful and intentional and was not in good faith.

## COUNT III: UNLAWFUL TIP SHARING (COLLECTIVE ACTION)

81.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

82.     As set forth above, Defendants' failure to allow their exotic dancers to retain all their tips by requiring them to "tip out" employees who do not customarily and regularly receive tips violates the Fair Labor Standards Act, 29 U.S.C. § 203(m). Plaintiffs bring this claim on behalf of themselves and all others similarly situated pursuant to 29 U.S.C. § 216(b).

## COUNT IV: VIOLATION OF ARIZONA FAIR WAGES AND HEALTHY FAMILIES ACT (CLASS ACTION)

83.    In addition to their FLSA claims, Plaintiffs assert claims for violations of the Arizona Fair Wages and Healthy Families Act set forth in §23.363.

84.    Defendants failed to pay Plaintiffs minimum wage under Arizona law and failed to pay Plaintiffs all owed wages under Arizona law.

## COUNT V: UNJUST ENRICHMENT (CLASS ACTION)

85.    Due to the facts as pled above, Plaintiffs have conferred a benefit upon Defendants. Defendants have knowledge of the benefit conferred and continue to retain that benefit undeservedly. Defendants voluntarily accepted and retained such benefit, because Plaintiffs worked for Defendants, Defendants permitted Plaintiffs to work for the business, and because Defendants chose to maximize business's profit at the expense of Plaintiffs and Class Members.

86.    It would be inequitable and unjust for Defendants to continue to retain the benefit, as Plaintiffs conferred a benefit on Defendants which Defendants kept for themselves.

## VIII.   COLLECTIVE AND CLASS ALLEGATIONS

### A.    FLSA Class Members

87.    Plaintiffs brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers at any time during the three years prior to the commencement of this action to present.

88.    Plaintiffs have actual knowledge that FLSA Class Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers who worked at Bourbon Street. As such, Plaintiffs have first-hand personal knowledge of the same pay violations at Bourbon Street for other dancers. Furthermore, other exotic dancers at Defendants' establishment have shared with Plaintiffs similar pay

violation experiences including wage and tip confiscations, as those described in this complaint.

89.     Other employees similarly situated to Plaintiffs work or have worked for Defendants' business but were not paid at the federally mandated minimum wage rate.

90.     FLSA Class Members perform or have performed the same or similar work as Plaintiffs.

91.     FLSA Class Members are not exempt from receiving pay at the federally mandated minimum wage rate under the FLSA.

92.     As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of minimum wage.

93.     Defendants' failure to pay for hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

94.     The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Class Members.

95.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

96.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

97.     Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can easily be calculated by a simple formula.  The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

98.     As such, Plaintiffs bring their FLSA minimum wage claims as a collective action on behalf of the following class:

**The FLSA Class Members are all of Defendants' current and former exotic dancers who worked for Defendants at any time starting three years before this lawsuit was filed up to the present.**

**B.    Rule 23 Class Action**

99.    Plaintiffs and the Arizona Fair Wages and Healthy Families Act Class Members incorporate all preceding paragraphs as though fully set forth herein.

100.    Defendants willfully violated Arizona Revised Statute § 23-363 and refused to pay dancers minimum wages and other owed wages (such as wages confiscated via forced tip outs, house fees, and VIP room dance fees).

101.    Plaintiffs bring their Arizona Fair Wages and Healthy Families Act wage claims as a Rule 23 class action on behalf of the following class:

**All of Defendants' current and former exotic dancers who worked for Defendants at any time starting five years before this lawsuit was filed up to the present.**

102.    Numerosity.  The number of members in the Arizona Class is believed to be well over forty.  This volume makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the Arizona Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Arizona Class may be determined from Defendants' employment files, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Arizona Class and Defendants.

103.    Typicality.  Plaintiffs' claims are typical of the Arizona Class because, like the members of the Arizona Class, Plaintiffs were subject to Defendants' uniform policies and practices and were compensated in the same manner as others in the Arizona Class. Defendants failed to pay non-exempt employees who worked at the club minimum wage for all of their hours worked.  Plaintiffs and the Arizona Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law.

104.   <u>Adequacy</u>.   Plaintiffs are a representative party who will fairly and adequately protect the interests of the Arizona Class because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law.  Plaintiffs have retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Arizona Class they seek to represent.

105.   <u>Commonality</u>.   Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

      a.    Whether Defendants failed to pay Plaintiffs and the Arizona Class the minimum wage for all hours worked; and

      b.    Whether Defendants took wages and tips from dancers to run their business in violation of Arizona Wage Laws.

106.   The common issues of law include, but are not limited to:

      a.    Whether Defendants improperly classified Plaintiffs and the Arizona Class as independent contractors;

      b.    Whether Plaintiffs and the Arizona Class are entitled to compensatory damages;

      c.    The proper measure of damages sustained by Plaintiffs and the Arizona Class; and

      d.    Whether Defendants' actions were "willful."

107.   <u>Superiority</u>.   A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Arizona Class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Arizona Class would create

the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

108.   A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identity of members of the Arizona Class are readily identifiable from Defendants' records.

109.   This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on the Defendants to prove it properly compensated its employees; and (3) the burden is on the Defendants to accurately record hours worked by employees.

110.   Ultimately, a class action is a superior forum to resolve the Arizona claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiffs and the Arizona Class according to applicable Arizona laws.

111.   Nature of notice to be proposed.  As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, i.e. "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona class by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## IX.   DAMAGES SOUGHT

112.   Plaintiffs, FLSA Class Members, and Arizona Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the mandated minimum wage rate under state law and federal law.

113.    Plaintiffs, FLSA Class Members, and Arizona Class Members are also entitled to recover all of the money Defendants misappropriated, such as house fees, forced tips, wages taken after their performances, and VIP room dance fees.

114.    Plaintiffs, FLSA Class Members, and Arizona Class Members are also entitled to an award of statutory liquidated damages in amounts prescribed by the Arizona Fair Wages and Healthy Families Act and the FLSA.

115.    Plaintiffs and FLSA Class Members are also entitled to prejudgment and post-judgment interest on unpaid back wages pursuant to the FLSA.

116.    Plaintiffs and Arizona Class Members are also entitled to an award of statutory treble damages in amounts prescribed by Arizona Revised Statutes § 23-355(A).

117.    Plaintiffs, FLSA Class Members, and Arizona Class Members are also entitled to an award of attorneys' fees and costs under the FLSA and the Arizona Fair Wages and Healthy Families Act.

## X.    JURY DEMAND

118.    Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and Fed. R. Civ. P. 38(A), Plaintiffs hereby demand trial by jury.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs, FLSA Class Members, and Arizona Class Members respectfully request that judgment be entered in their favor awarding the damages requested above. Plaintiffs also request for such other and further relief to which Plaintiffs and Class Members may be entitled, at law or in equity.

Respectfully submitted,

By:   /s/ *David W. Hodges*
David W. Hodges
**HODGES & FOTY, L.L.P.**
Texas State Bar No. 00796765
***Pro Hac Vice Forthcoming*
dhodges@hftrialfirm.com
Michael Goldsmith
Texas State Bar No. 24120856

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**\*\*Pro Hac Vice Forthcoming*
mgoldsmith@hftrialfirm.com
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND
CLASS MEMBERS