**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Myers, et al., | No. CV-21-01244-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Racerworld LLC, et al., | |
| Defendants. | |

Plaintiffs Nicole Myers and Emily Peters assert a collective and class action against Racerworld, LLC d/b/a Bourbon Street, and other defendants (collectively "Bourbon Street"), for alleged misclassification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and related Arizona law. Plaintiffs are exotic dancers who claim that Bourbon Street misclassified their status as independent contractors, required that they pay rent, and compensated them solely with tips. Plaintiffs allege that they should have been classified as employees and paid wages. (Doc. 1 ¶¶ 1–4.) Bourbon Street now moves to dismiss and seeks enforcement of an arbitration clause in both Plaintiffs' license agreements. (Doc. 16.)

## I.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted in response to widespread judicial hostility toward arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of the FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy

1  thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and
2  enforceable, save upon such grounds as exist at law or in equity for the revocation of any
3  contract." 9 U.S.C. § 2. The Supreme Court has described this provision of the FAA as
4  both a "liberal federal policy favoring arbitration," and the "fundamental principle that
5  arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (citing *Moses H. Cone*
6  *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Rent-A-Center, W., Inc. v.*
7  *Jackson*, 561 U.S. 63, 67 (2010)).

8      In line with these principles, courts must place arbitration agreements on equal
9  footing with other contracts and enforce them according to their terms. *Concepcion*, 563
10  U.S. at 339 (citations and quotations omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
11  207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of
12  discretion by a district court, but instead mandates that district courts shall direct the parties
13  to proceed to arbitration on issues as to which an arbitration agreement has been signed."
14  *Chiron Corp.*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213,
15  218 (1985)). The Court's role under the FAA, therefore, is limited to determining "(1)
16  whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement
17  encompasses the dispute at issue." *Id.*

18      "When evaluating a motion to compel arbitration, courts treat the facts as they
19  would when ruling on a motion for summary judgment, construing all facts and reasonable
20  inferences that can be drawn from those facts in a light most favorable to the non-moving
21  party." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016)
22  (internal citation omitted). Generally, "the party resisting arbitration bears the burden of
23  proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-*
24  *Alabama v. Randolph*, 531 U.S. 79, 91 (2000). But where the issue is whether there exists
25  an agreement to arbitrate, the party seeking to enforce an arbitration agreement bears the
26  burden of showing that it exists. *See, e.g.*, *Sanford v. Memberworks, Inc.*, 483 F.3d 956,
27  962–64 (9th Cir. 2007). Courts apply state-law principles to determine whether an
28  agreement to arbitrate is valid. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944

(1995); *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

## II.   BACKGROUND

Bourbon Street is an "adult entertainment club" that offers exotic dancing to its patrons. Plaintiffs Myers and Peters allege that they worked as exotic dancers at Bourbon Street from August 2017 to November 2019. (Doc. 1 ¶ 44.) They were classified as independent contractors but aver that they and the putative class and collective members should have been classified as employees. (*Id*. ¶¶ 50, 59.) The Complaint alleges that Bourbon Street personnel "hired/fired, issued pay, supervised, directed, disciplined, and performed all other duties generally associated with that of an employer with regard to the dancers." (*Id*. ¶ 60.) Bourbon Street, moreover, "required Plaintiffs and other exotic dancers to perform private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants." (*Id*. ¶ 59.)

Both plaintiffs executed contracts with Bourbon Street denominated as License Agreements. The Agreements signed by Myers and Peters appear to be identical. Myers signed her Agreement in October 2018, over one year after she began working at the Bourbon Street premises. (Doc. 16-1 at 2.) Peters signed her agreement on August 18, 2017, about the time that she began working there. (Doc. 16-2 at 2.)

The Agreements indicate that each dancer is granted "a nonexclusive license . . . to perform adult entertainment personal services for patrons . . . during the periods of time the Premises is open to the general public." (Doc. 16-1 at 2–3; Doc. 16-2 at 2–3.) The Agreements also require that the Plaintiffs pay Bourbon Street a "License Fee" "in exchange for the privilege of exercising the License" and they include a provision disclaiming an employer-employee relationship. (Doc. 16-1 at 3, 4–5; Doc. 16-2 at 3, 4–5.)

Both Agreements contain a "**Binding Arbitration and Class Action Waiver**" that "applies to any dispute between you and [Bourbon Street] or anyone acting for and on behalf of [Bourbon Street]" (the "Arbitration Agreement"). (Doc. 16-1 at 7; Doc. 16-2 at 7.) The term "dispute" is broadly defined as including "any dispute, action, or other

controversy between you and [Bourbon Street] concerning this Agreement, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis." (*Id.*) When a dispute arises, the injured party must provide a written notice by certified mail to the other party. Then, the parties must attempt to resolve the dispute through informal negotiations for a period of 60 days. If the dispute is not resolved by the end of that period, the injured party "may commence arbitration."[1] (*Id.*) Arbitration proceedings shall "be conducted exclusively by individual binding arbitration governed by the [FAA]. Class arbitrations aren't permitted." (*Id.*) The Arbitration Agreement continues,

> Thus, by execution and delivery of this Agreement to [Bourbon Street], you're giving up your right to litigate disputes in court before a judge or jury (or participate in court as a party or class member). Instead, all disputes will be resolved before a neutral arbitrator, whose decision will be final except for a limited right of appeal under the FAA.

(Doc. 16-1 at 7–8; Doc. 16-2 at 7–8.)

The Arbitration Agreement further addresses the subject of class actions in a stand-alone subparagraph entitled "**Class Action Waiver**."  That subparagraph provides,

> Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis. Neither you nor [Bourbon Street] will seek to have any dispute heard as a class action, private attorney general action, or in any other proceeding in which either party acts or proposes to act in a representative capacity. No arbitration or other proceeding will be combined with another without the prior written consent of all parties to all affected arbitrations or proceedings.

(Doc. 16-1 at 8; Doc. 16-2 at 8.)

Finally, under the heading "**Claims or Disputes Must be Filed within One Year**," the Arbitration Agreement specifies that,

---

[1] Alternatively, an injured party may pursue litigation in the Maricopa County, Arizona, small claims court "if the dispute meets all requirements to be heard in such small claims court." (Doc. 16-1 at 7; 16-2 at 7.) This small-claims-court election does not require any party to engage in informal negotiation. (*Id.*)

1
2
3
4

> To the extent permitted by law, any claim or dispute to which [the Arbitration Agreement] applies must be filed within one year . . . in arbitration . . . . The one-year period begins when the claim or Notice of Dispute first could be filed. If such a claim or dispute isn't filed within one year, it's permanently barred.

5
6

(*Id.*)

7

Based on these provisions, Bourbon Street now moves to dismiss Plaintiffs' Complaint and seeks an order compelling arbitration. (Doc. 16.)

8
9

## III.   DISCUSSION

10

### A.   Validity of Arbitration Agreement

11

The Court's initial task is to determine whether a valid arbitration agreement exists between the parties. Ordinary contract law principles guide this inquiry. *Estate of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc.*, 234 Ariz. 18, 21 (App. 2014). To create a valid, enforceable contract, there must be "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 246 Ariz. 126, 129 (App. 2019) (citations omitted).

12
13
14
15
16

Plaintiffs do not dispute that they signed the License Agreements. They instead offer several arguments as to why, in their estimation, the Arbitration Agreement is unenforceable—it is illusory for lack of consideration and mutuality, fails to meet Plaintiffs' reasonable expectations, is substantively unconscionable, and violates public policy. None of Plaintiffs' arguments are persuasive.

17
18
19
20
21

The Arbitration Agreement is supported by both mutuality and consideration. The Agreement requires both parties to resolve their claims through arbitration, not just Plaintiffs. (*See* Doc. 16-1 at 7.) Accordingly, the Arbitration Agreement is bilateral, not unilateral. *See Taylor v. Kingman Feldspar Co.*, 41 Ariz. 376, 381 (1933) ("Mutuality is absent when one only of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only. And, conversely, a contract is not unilateral where it contains mutual obligations binding on both parties."). This bilateral, mutually binding

22
23
24
25
26
27
28

promise provides sufficient consideration to support the Arbitration Agreement. *See Carroll v. Lee*, 148 Ariz. 10, 13 ("Clearly a promise for a promise constitutes adequate consideration."); *see also Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 513 (App. 2011) ("When a contract contains mutual promises and is in writing, consideration will almost always be adequate." (quotation omitted)). While Plaintiffs claim the Arbitration Agreement fails to bind Bourbon Street "because it allows Defendants to change the [Agreement] at any time without notice" (Doc. 13 at 6), that is not the case. Indeed, subparagraph 8.9 specifically provides that Plaintiffs "may reject any change [Bourbon Street] makes to [the Arbitration Agreement] by sending [Bourbon Street] notice within 30 days of the change." (Doc. 16-1 at 8.)

Plaintiffs also contend the entire License Agreement is illusory because it grants both sides the right to terminate the Agreement without notice: "The License granted to Licensee pursuant to this License Agreement has no definite term and may be terminated by Licensor or Licensee at any time without prior notice or other requirement." (Doc. 16-1 at 3.) This provision does not render the Agreement illusory. "An illusory promise is one that is so indefinite that it cannot be enforced, or by its terms makes performance optional or entirely discretionary on the part of the promisor." *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1065 (S.D. Cal. 2015); *see also Allen D. Shadron, Inc. v. Cole*, 101 Ariz. 122, 124 (1966). Accordingly, in general, "an agreement which permits one party to withdraw at his pleasure is void." *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588 (1977); *see also Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 476 (App. 2015) ("To agree to do something and to reserve the right to terminate the agreement at will is no agreement at all." (cleaned up)). Nevertheless, employment-related contracts are often terminable unilaterally without being illusory. *See Demasse v. ITT Corp.*, 194 Ariz. 500, 504 (1999) (en banc) ("[A]t-will employment is for an indefinite term, and American courts have come to hold it can be terminated at any time for good cause or no cause at the will of either party."); *Mattison v. Johnston*, 152 Ariz. 109, 112 (App. 1986) (finding continued employment in an at-will relationship sufficient consideration for a restrictive covenant).

This is so because "[a]s long as the party with the reserved power to terminate is irrevocably bound for any period of time or has materially changed any of its legal relations or otherwise rendered some performance capable of operating as a consideration, consideration has been given and the other's promise is enforceable." 13 Corbin on Contracts § 68.9, at 247–48 (rev. ed. 1995). Although the Court declines to decide whether Plaintiffs were in fact employees, the reasoning underlying the cited principle nevertheless controls. The License Agreement is not illusory because both parties rendered performance capable of operating as consideration. *See Fagerstrom*, 141 F. Supp. 3d at 1065 ("Here, both Plaintiffs and Amazon have incurred performance obligations under the Agreement, and those performance obligations remain in place based on the assent manifested by the parties and the consideration exchanged."). For instance, Plaintiffs agreed to perform at Bourbon Street and to arbitrate their claims, and Bourbon Street promised in return to provide a place for Plaintiffs to perform and to also arbitrate its claims. (*See* Doc. 16-1.) The parties' relationship continued, uninterrupted, for years. (Doc. 1 ¶¶ 8–9.) Thus, consideration has been exchanged and obligations have been triggered on both sides.

Relatedly, the parties' actions demonstrate that they believed they were entering into a valid agreement. *See* 2 Corbin on Contracts § 5.32 ("When it appears to a court's satisfaction that the parties have believed themselves to be making a contract and to be affecting their legal relations with each other, sound practical policy requires that their mutual expressions be given an interpretation that will effectuate their belief and intention."). Accordingly, the Court declines to read the License Agreement in a manner that will render the parties' contractual obligations illusory.

Plaintiffs next argue that the doctrine of reasonable expectations precludes enforcement of the Arbitration Agreement. In Arizona, courts begin with a presumption that standard terms in a written contract are valid and binding on the parties. *See Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 247 (App. 2005). In some cases, though, the reasonable expectations doctrine may rebut that presumption. "Where [one] party has

1   reason to believe that the party manifesting . . . assent would not do so if he knew that the

2   writing contained a particular term, the term is not part of the agreement." *Darner Motor*

3   *Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 391 (1984) (quoting

4   Restatement (Second) of Contracts § 211). Critically, "it is only when 'the other party has

5   reason to believe' that the signing party would not accept the term that the term may

6   be struck from the agreement." *Harrington*, 211 Ariz. at 247. This "reason to believe" may

7   be shown by the parties' prior negotiations or inferred from the fact that the challenged

8   term is bizarre or oppressive, eviscerates the non-standard terms explicitly agreed to, or

9   eliminates the dominant purpose of the transaction. *Darner*, 140 Ariz. at 392. There are

10  no allegations in the Complaint suggesting that any of these indications are present in

11  this instance.

12          Plaintiffs do not claim the Agreement was inconsistent with the parties' prior

13  negotiations. Nor do they plausibly suggest that the Agreement eviscerates the contract's

14  non-standard terms or eliminates the contract's dominant purpose. (To the contrary, the

15  Arbitration Agreement appears to be a fundamental element of the contract. *See*

16  *Fagerstrom*, 141 F. Supp. at 1065.) Plaintiffs do, however, argue that the Arbitration

17  Agreement contains terms that are "particularly bizarre and oppressive." (Doc. 13 at 7.)

18  Plaintiffs object particularly to the Agreement's provisions regarding arbitration costs.

19  The entire relevant subparagraph reads as follows:

20              The AAA rules will govern payment of filing fees and the
                AAA's and arbitrator's fees and expenses. The arbitrator will
21              determine the amount of fees, costs, and expenses unless you
                and [Bourbon Street] agree on them. [Bourbon Street] won't
22              seek its attorney's fees from you in any arbitration unless you
                request an award of attorney's fees. Fees and expenses aren't
23              counted in determining how much a dispute involves.

24  (Doc. 16-1 at 8.) Plaintiffs claim this subparagraph is oppressive because it saddles them

25  with the "entirety of the cost of administering arbitration." (Doc. 13 at 6–7.) But that is

26  plainly not the case. The provision explicitly provides that fees, costs, and expenses will

27  be assessed by the arbitrator unless the parties agree otherwise. While the AAA rules do

28  indicate that the "filing fee shall be advanced by the party or parties making a claim or

1    counterclaim," the rules also state, in line with the Arbitration Agreement, that the filing

2    fee is "subject to final apportionment by the arbitrator." (*See* Doc. 13 at 7 n.5.)

3        Additionally, there are no allegations that Plaintiffs' arbitration costs would be

4    prohibitive. Arizona law provides that "arbitration agreements are enforceable in

5    the absence of individualized evidence to establish that the costs of arbitration are

6    prohibitive." *Harrington*, 211 Ariz. at 252; *see also Green Tree Fin. Corp.-Ala. v.*

7    *Randolph*, 531 U.S. 79, 91 (2000) ("The 'risk' that Randolph will be saddled with

8    prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

9    To invalidate the [arbitration] agreement on that basis would undermine the liberal

10   federal policy favoring arbitration."). Thus, while the existence of overwhelming

11   arbitration costs could theoretically preclude Plaintiffs from effectively vindicating

12   their rights, *see Randolph*, 531 U.S. at 91, the Complaint contains no indication that

13   Plaintiffs will bear such oppressive costs. *See id.* ("[W]here, as here, a party seeks to

14   invalidate an arbitration agreement on the ground that arbitration would be prohibitively

15   expensive, that party bears the burden of showing the likelihood of incurring such costs.").

16   Thus, the terms of the Arbitration Agreement are neither bizarre nor oppressive, and the

17   reasonable-expectations doctrine is inapplicable here. (Doc. 13 at 6–7.)

18       Plaintiffs next contend that the Arbitration Agreement is substantively

19   unconscionable and violates public policy. Substantive—as opposed to procedural—

20   unconscionability "concerns the actual terms of the contract and examines the relative

21   fairness of the obligations assumed." *Maxwell v. Fidelity Fin. Serv., Inc.*, 184 Ariz. 82,

22   89 (1995). "Indicative of substantive unconscionability are contract terms so one-sided as

23   to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations

24   and rights imposed by the bargain, and significant cost-price disparity." *Id.*

25       As discussed above, the Arbitration Agreement's cost provisions are neither

26   oppressive nor preclude Plaintiffs from pursuing their statutory claims. Again, the

27   Agreement provides that the "arbitrator will determine the amount of fees, costs, and

28   expenses" (Doc. 16-1 at 8), and Plaintiffs have failed to demonstrate that their

arbitration costs would be prohibitively expensive. *See Rizzio v. Surpass Senior Living, LLC*, 248 Ariz. 266, 273 (App. 2020) ("[T]he mere assertion that costs were prohibitive was insufficient to establish substantive unconscionability."); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) ("[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy.").

The Agreement's terms are also not so one-sided as to be fairly classified as substantively unconscionable. The License Agreement was terminable by both parties at will and the Arbitration Agreement was modifiable by Bourbon Street only with consent. Additionally, Bourbon Street was, like Plaintiffs, explicitly bound by the Arbitration Agreement, including the class action waiver.[2] (*See* Doc. 16-1 at 8.) Thus, the License Agreement, including the Arbitration Agreement, is neither substantively unconscionable nor violative of public policy.[3]

Plaintiffs finally argue that the Arbitration Agreement is unenforceable under Arizona law, which provides that the Arizona Revised Uniform Arbitration Act ("RUAA") "shall not apply to an agreement to arbitrate any existing or subsequent controversy between an employer and employees or their respective representatives." A.R.S. § 12-3003(B)(1); *see also North Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 302 (2004) (holding that A.R.S. § 12–1517[4] exempts from the Arizona

---

[2] To the extent Plaintiffs suggest that the Arbitration Agreement's class action waiver is unconscionable or unlawful (*see* Doc. 13 at 10 (citing *Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1288 (D. Ariz. 2007)), they are almost certainly mistaken. *See Epic Sys. Corp. v. Lewis*, 584 U.S. ---, 138 S. Ct. 1612 (2018); *Concepcion*, 563 U.S. 333.

[3] Plaintiffs argue in a single sentence that "the [Arbitration Agreement] also grossly restricts the statute of limitations for which Plaintiffs have the right to bring their claims to a single year, [and] improperly shifts attorney's fees and court costs in direct contravention of the Plaintiffs' rights under the FLSA and Arizona State law." The Court declines to address these cursory arguments, which are entirely devoid of both legal citation and adequate explanation.

[4] A.R.S. § 12-1517 provides: "This article shall have no application to arbitration between employers and employees or their respective representatives." A.R.S. § 12-3003(B)(1) has virtually identical language but applies to arbitration agreements made after January 1, 2011. Because the parties executed the License Agreements well after that date, § 12-3003(B)(1) controls. *See Shield Sec. & Patrol LLC v. Lionheart Sec. & Consulting LLC*, No. 1 CA-CV 16-0678, 2017 WL 4897460, at *1 n.2 (Ariz. App. Oct. 31, 2017) (unpublished).

Uniform Arbitration Act "all arbitration agreements between employers and employees"). In this respect, the RUAA differs from the FAA which, aside from a few narrow exceptions, applies to arbitration agreements in employment contracts. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001); *Hamblen v. Hatch*, 242 Ariz. 483, 488 (2017). Despite Plaintiffs' arguments to the contrary, the RUAA is irrelevant here. Even assuming that § 12-3003(B)(1) is not preempted by the FAA,[5] the FAA governs in this case because the parties specifically agreed that it would: "If you and [Bourbon Street] don't resolve any dispute by information negotiation or in small claims court within 60 days from the date a Notice of Dispute is sent, any other effort to resolve the dispute will be conducted exclusively by individual arbitration governed by the [FAA]."[6] (Doc. 16-1 at 7.) Thus, because the FAA applies, the instant dispute is arbitrable, whether or not the License Agreement is in fact an "employment agreement."

### B.    Scope of Arbitration Agreement

Having decided that the Arbitration Agreement is valid, the Court must now determine whether the instant dispute falls within the scope of the Agreement. *Chiron Corp.*, 207 F.3d at 1130. "The scope of an arbitration agreement is governed by federal substantive law." *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Chiron*, 207 F.3d at 1131 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

Plaintiffs concede that the bulk of their claims come within the scope of the Arbitration Agreement. They claim, however, that Plaintiff Myers' claims from prior to

---

[5] A bold assumption, given the Supreme Court's recent arbitration holdings. *See, e.g.*, *Concepcion*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *see also Hamblen*, 242 Ariz. at 488 ("[T]he FAA preempts state law and governs all written arbitration agreements involving interstate commerce, making such agreements enforceable in both federal and state courts." (quoting *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 51 (1999))).
[6] Although Plaintiffs assert that "the Agreement clearly states that it is governed by the laws of the State of Arizona" (Doc. 13 at 14), the paragraph they cite explicitly clarifies that Arizona law governs "subject to the provisions of Section 8 with respect to mandatory arbitration and class action waivers." (Doc. 16-1 at 9.)

October of 2018 are not governed by the Agreement because she "began working for Defendants in August of 2017 and she did not sign the [License] Agreement until October of 2018." (Doc. 13 at 15.) Bourbon Street responds that Plaintiff Myers' claims are captured by the Arbitration Agreement because "(1) the Provision's language does not make clear that it only applies to claims that may arise going forward; and (2) the Provision covers any dispute between the parties concerning the agreement, which governs the entire licensee/licensor relationship." (Doc. 14 at 8.)

By its terms, the Arbitration Agreement "applies to any dispute between [Plaintiffs] and [Bourbon Street]." (Doc. 16-1 at 7.) "The term 'dispute' means any dispute, action, or other controversy between [Plaintiffs] and [Bourbon Street] concerning this Agreement, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis. 'Dispute' will be given the broadest possible meaning allowable under law." (*Id.*)

Given the breadth of this language, the Court concludes that Myers' claims, even those predating her signing the License Agreement, come within the Arbitration Agreement's scope. While some courts have held that the choice of language in an arbitration provision may suggest that the provision governs only present or future conduct, the language here is not so limited. *Cf. Morse v. ServiceMaster Glob. Holdings Inc.*, No. 10-cv-00628, 2012 WL 4755035, at *5 (N.D. Cal. Oct. 4, 2012) ("The use of the present participle 'arising' makes it clear that it applies to claims that may arise going forward, not claims that have already accrued."). Rather, it encompasses all disputes between the parties *concerning* the License Agreement. The Agreement, which governs the parties' entire relationship, is unquestionably implicated by all of Myers' claims, even those predating her signing of the Agreement. Accordingly, all her claims must go through arbitration. *See Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005) ("Where an arbitration provision does not contain a temporal limitation, the parties may be compelled to arbitrate despite the fact that the challenged conduct predates the signing of the agreement.").

### C.      Arbitrability of Collective and Class Action

"While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). For that reason, "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.* (quoting *Volt*, 489 U.S. at 479). Parties are therefore "generally free to structure their arbitration agreements as they see fit." *Id.* at 683 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)). This means, among other things, that "parties may specify *with whom* they choose to arbitrate their disputes." *Id.* "From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684.

The parties did not agree to submit to class arbitration in this case. Indeed, the Arbitration Agreement explicitly and specifically precludes the arbitration of class claims. (*See* Doc. 16-1 at 8 ("Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis.").) This provision is valid and controlling, *see Epic Sys.*, 138 S. Ct. 1612; *Concepcion*, 563 U.S. 333, and must be given effect by this Court.

### D.      Remedy

"A district court may dismiss an action, rather than stay it, when all of the issues are arbitrable." *2151 Michelson, L.P. v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 754 F. App'x 596, 597 (9th Cir. 2019) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). In this case, for the reasons described above, all the claims are arbitrable. The Court will therefore dismiss the case without prejudice and order that the parties submit to arbitration.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED granting** Defendants' Motion to Compel Arbitration and Dismiss (Doc. 16).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to dismiss this action without prejudice and close the case.

**IT IS FINALLY ORDERED** that the oral argument set for May 25, 2022, is vacated. The Court finds that the facts and legal arguments were adequately presented in the parties' papers and in the record. The decisional process would not have been significantly aided by oral argument. *See Partridge  v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f).

Dated this 18th day of May, 2022.

Michael T. Liburdi
United States District Judge